UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Chisum LLC, a Minnesota limited liability company

Civ. File No. 01-816 (PAM/RLE)

Plaintiff,

v.

**MEMORANDUM AND ORDER**

Chief Automotive Systems, Inc., a Delaware corporation,

Defendant.

---

This matter is before the Court on Defendant's Motion for a Temporary Restraining Order and Motion to Amend Counterclaims, and on Plaintiff's Motion for a Preliminary Injunction.

**BACKGROUND**

Defendant Chief Automotive Systems, Inc. ("Chief") designs, manufactures, and sells equipment that straightens automobile frames after collisions. In the early 1970s, Chief manufactured a "revolutionary" frame-straightening machine called the EZ Liner. The EZ Liner was invented by Lavell Chisum, and the patent for the machine was assigned to Chief. That patent has now expired.

Plaintiff Chisum LLC ("Chisum") is a start-up company with ties to Lavell Chisum. Chisum constructs frame-straightening machines that are very similar to those manufactured by Chief.

FILED NOV 1 3 2001
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD_________
DEPUTY CLERK_________

Chief contends that Chisum is also known as CollisionCopyCats.com and Business First America ("BFA"). Chief alleges that BFA ordered a frame-straightening machine from Chief in the fall of 2000, sandblasted the paint off, repainted it, and that CollisionCopyCats.com represented at trade shows and in product literature that the machine was manufactured by CollisionCopyCats.com, not by Chief. In March 2001, Chief and BFA, d/b/a CollisionCopyCats.com, entered into a settlement agreement in which BFA agreed to stop representing that Chief's products were its own and paid Chief money damages. Chief has submitted evidence that the same people who worked for BFA now are officers or "key players" for Chisum. For example, the current President of Chisum, Timothy Fisher, signed the check for BFA in payment of the settlement agreement between Chief and BFA. Moreover, the billing contact listed for the websites of both Chisum and CollisionCopyCats.com is BFA.

For its part, Chisum denies that it is related to BFA or CollisionCopyCats.com. Chisum acknowledges that the machines it designs are very similar to Chief's machines, but Chisum notes that there are no valid patents on the machines alleged to be copied, and thus any copying is perfectly legal.

## DISCUSSION

### A. Chief's Motion to Amend Counterclaim

Chief seeks to amend its counterclaim to assert the claims of trademark infringement, unfair competition, false advertising, deceptive trade practices, tortious interference with

contractual relations, and misappropriation of trade secrets. These claims form the underpinning of Chief's request for a TRO. As the Court stated in the hearing on this matter, Chief will be allowed to amend its counterclaim.

## B. Injunctive Relief

A temporary restraining order ("TRO") or preliminary injunction may be granted only if the moving party can demonstrate: (1) a likelihood of success on the merits; (2) that the balance of harms favors the movant; (3) that the public interest favors the movant; and (4) that the movant will suffer irreparable harm absent the restraining order. Dataphase Sys., Inc. v. C L Sys., Inc., 640 F.2d 109, 113 (8th Cir. 1981). Injunctive relief is considered to be a "drastic and extraordinary remedy that is not to be routinely granted." Intel Corp. v. ULSI Sys. Tech., Inc., 995 F.2d 1566, 1568 (Fed. Cir. 1993).

### 1. Defendant's Motion for Temporary Restraining Order

Although the factual background summarized above is presented in some detail in Chief's memorandum, it is in large part irrelevant to Chief's request for a TRO. In its Motion, Chief asserts that it is planning to manufacture and market a new frame-straightening machine, and that it intends to call this machine the "EXELERATOR." Chief has filed an intent-to-use application with the PTO, but has not received a registered trademark on the EXELERATOR name. According to Chief, Chisum has stolen the EXELERATOR design and plans to market its identical machine under the name

"ACCELERATOR."[1] Chief seeks a TRO to protect its not-yet-issued trademark on the EXELERATOR name, and raises claims for misappropriation of trade secrets and unfair competition.

Although the balance of the equities may favor Chief's position, the law is clear that Chief is not entitled to protection for its unissued trademark under the Lanham Act or other statutes. Under 15 U.S.C. § 1057(c), Chief's priority in its mark is contingent on registration of that mark. Chisum cites to a plethora of commentators who have noted that an intent-to-use application for a trademark confers no right to obtain an injunction against use of a confusingly similar mark. (Pl.'s Opp'n Mem. at 11.) Moreover, courts that have confronted the situation have held that an intent-to-use applicant does not have standing to seek an injunction against a confusingly similar mark. (Id. at 13.) Chief's rights to enforce its mark arise only if and when that mark is registered by the PTO.

Nor is Chief entitled to protection under the common law for a mark that is not yet in use in commerce. Chief cannot contend that the EXELERATOR mark has established a presence in the market, because that mark is not yet being used on any product or in any promotional materials. Thus, Chief has not acquired a common-law trademark in the name EXELERATOR. First Bank v. First Bank System, Inc., 84 F.3d 1040, 1044 (8th Cir. 1996).

---

[1] According to Chisum, it has already started to market and take orders for the "ACCELERATOR" machine. Chisum also contends that it came up with the ACCELERATOR name without knowing of Chief's intent to use the EXELERATOR name. The Court finds such a contention dubious, at best.

Until Chief's mark is registered and/or used in commerce, Chief cannot show that it is likely to succeed on the merits of its claims. Therefore, Chief's request for a TRO must be denied. That denial, however, will be without prejudice, because Chief may find it necessary to renew its request for a TRO to protect the EXELERATOR name once that name is registered or once it has developed a market presence with the name.

2. Plaintiff's Motion for Preliminary Injunction

Chisum seeks a preliminary injunction against Chief because it contends that Chief is engaged in deceptive and harmful disparagement of Chisum's business. According to Chisum, Chief has told potential customers of Chisum that Chisum passes Chief's products off as its own, that Chisum is infringing Chief's patents, and that Chisum is not a viable business. Chisum contends that it is a legitimate business with full manufacturing capabilities, and that it is not passing off Chief's machines as its own. Chisum alleges that Chief has no factual basis for these accusations and that Chief has through its deceptive business disparagement violated the Lanham Act, a host of Minnesota statutes, and has committed various common-law torts.

Chief disputes the majority of Chisum's allegations, and argues that the comments on which Chisum bases its request for a preliminary injunction are comments made before June 2001, at the latest. The staleness of the comments, according to Chief, belies Chisum's claims of immediate and irreparable injury. Moreover, Chief contends that, to the extent that representatives of Chief ever made the comments about which Chisum complains, Chief has

now clearly instructed its sales force not to make such comments.

Chisum has shown, at this preliminary stage of the litigation, that it may succeed on its business disparagement and unfair competition claims. Chisum has also alleged that representatives of Chief continue to make disparaging remarks, and that such remarks are causing Chisum irreparable harm. Chief's assertions that it has instructed its employees not to make further comments serves to show that Chief will not be unduly harmed by the issuance of an injunction. Therefore, the Court will grant Chisum's request for an injunction.

**CONCLUSION**

As the Court noted at the hearing, it is in the parties' best interests to resolve their disputes quickly. The Court is concerned that the accusatory and inflammatory tone of the submissions merely serves to increase ill feelings and lengthen the time spent litigating the case. The Court encourages the parties to attempt to resolve what are undoubtedly substantial differences of opinion, whether through informal means or through the offices of the Magistrate Judge or a Special Master.

For the foregoing reasons, and upon all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendants' Motion for Temporary Restraining Order (Clerk Doc. No. 15) is **DENIED WITHOUT PREJUDICE**;

2. Defendant's Motion to Amend Counterclaim (Clerk Doc. No. 13) is **GRANTED**;

3. Plaintiff's Motion for Preliminary Injunction (Clerk Doc. No. 19) is **GRANTED**, and Defendant Chief Automotive Systems, Inc., as well as its parent, subsidiary and affiliate corporations, sales representatives, employees, officers, agents, servants, attorneys and representatives, as well as those in active concert or participation with them, are hereby enjoined from disparaging the products, services, or business of Plaintiff Chisum LLC by making false or misleading representations of fact, including statements that:

   a. The products advertised and/or sold by Plaintiff are manufactured by Defendant and repainted or otherwise altered by Plaintiff to remove Defendant's trademarks and other identifying marks;

   b. Plaintiff's products infringe on patents held by Defendants; and

   c. Plaintiff is not a viable business and/or is going out of business.

4. Pursuant to Fed. R. Civ. P. 65, within ten days from the date of this Order, Plaintiff shall post a bond in the amount of $10,000 to secure this Preliminary Injunction. In lieu of a bond, Plaintiff may post cash or its equivalent with the Clerk of Court.

Dated: November 9, 2001

Paul A. Magnuson
United States District Court Judge